1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   SEAMES D. CASTELBLANCO,                    Case No.  13-cv-05315-JCS

          Plaintiff,

8

          v.                                   ORDER DENYING PLAINTIFF'S
9                                              MOTION FOR SUMMARY JUDGMENT
                                               AND GRANTING JUDGMENT IN
10  CAROLYN W. COLVIN,                         FAVOR OF DEFENDANT

          Defendant.                           Dkt. Nos. 14, 15
11

12

13  **I.      INTRODUCTION**

14          In this Social Security case, Seames Castelblanco ("Plaintiff" or "Claimant"), represented

15  by Meghan C. Pluimer of the Homeless Action Center ("Counsel"), appeals the Commissioner of

16  Social Security's decision denying him disability benefits under Title XVI of the Social Security

17  Act.  Plaintiff filed a Motion for Summary Judgment, which is opposed by the Commissioner.  For

18  the reasons stated below, the Court DENIES Plaintiff's Motion for Summary Judgment.[1]

19  **II.     BACKGROUND**

20          **A.  Procedural History**

21          Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of

22  the Social Security Act on February 2, 2010, alleging disability since January 1, 2001.

23  Administrative Record ("AR") 54-55, 129.  As the Social Security Act does not allow payment of

24  _____

25          [1] The parties have consented to the jurisdiction of the undersigned magistrate judge
    pursuant to 28 U.S.C. § 636(c).
26          Only the Plaintiff filed a motion for summary judgment in this action, which is opposed by
    the Commissioner.  However, it is clear from the Commissioner's Opposition that she seeks
27  summary judgment that affirms the decision below.  Accordingly, the Opposition is construed by
    the Court as a motion by Defendant for summary judgment, which is GRANTED for the reasons
    stated below.  In the future, the Court expects the Commissioner to file her own motion for
28  summary judgment if she desires entry of judgment in her favor.

United States District Court
Northern District of California

1  Title XVI benefits prior to the date of application, Plaintiff amended his alleged onset date to

2  February 2, 2010.  AR 35-36, 216.  The Social Security Administration denied Plaintiff's

3  application for benefits initially on September 22, 2010.  AR 54-55.  Plaintiff requested

4  reconsideration on October 6, 2010.  AR 55.  That request was denied on January 13, 2011.  AR

5  55, 64-69.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January

6  20, 2011.  AR 70.  A hearing was held on February 2, 2012.  AR 13.  On February 13, 2012, ALJ

7  John J. Flanagan denied Plaintiff's application for benefits.  AR 10-28.  The Appeals Council

8  denied Plaintiff's request for review of the ALJ's decision on September 19, 2013, making the

9  ALJ's decision the final decision of the Commissioner for the purposes of judicial review.  AR 1-

10  4.

11      Plaintiff appealed the decision of the Commissioner denying him benefits on November

12  15, 2013, and he filed a Motion for Summary Judgment on April 3, 2014 ("Motion").  The

13  Commissioner filed an Opposition to Plaintiff's Motion for Summary Judgment on April 30, 2014

14  ("Opposition").  Plaintiff filed a Reply in Response to Defendant's Opposition to Plaintiff's Motion

15  for Summary Judgment on May 15, 2014 ("Reply").

16      **B.  Administrative Record**

17      Seames Castelblanco was 27 years old at the time he filed his application on February 2,

18  2010.  AR 129.  He has been homeless in Berkeley, California for several years.  AR 16, 219.  He

19  did not graduate from high school, but he did pass the General Education Development ("GED")

20  test in 2007.  AR 35.  Mr. Castelblanco has no past relevant work.  AR 21.  He worked from 1993

21  through 2002 but the work was performed on a part-time, short-term basis with earnings that did

22  not signify the performance of substantial gainful activity.  *Id.*  Mr. Castelblanco has spent periods

23  of his adult life in jail, prison, and on parole.  AR 36.

24      Mr. Castelblanco's record indicates a long history of mental impairments.  He was

25  diagnosed at age five with Specific Learning Disability and Secondary Adjustment Reaction of

26  Childhood with Conduct Disorder.  AR 238-239.  Mr. Castelblanco was first admitted to a

27  psychiatric hospital at age eight for out-of-control behavior.  AR 298-302.  His Discharge Report

28  diagnosed him with Major Depression, Anxiety Disorder, and Oppositional Defiant Disorder.  *Id.*

United States District Court
Northern District of California

He completed most of his schooling in residential treatment centers ("RTC") with therapy and medication.  AR 298, 359, 361, 380, 418-453, 531.  At age 16, he was discharged due to a lack of progress from Provo Canyon School, an RTC where he had been referred for treatment of depression, anxiety, and ADHD.  AR 359-363.  His discharge report included diagnoses of Major Depression, ADHD, and Oppositional Defiant Disorder.  *Id*.  Records from Olive Crest Treatment Center, another RTC Claimant attended, show mixed progress, with improvements in therapy, academics, and relating to his peers, but continued problems with inappropriate behavior, clouded judgment, and opposition to authority.  AR 513-14, 531.

Mr. Castelblanco began using drugs and alcohol at age 18, at which time his mother forced him to leave home and he lived on the streets.  AR 910.  One year later, his mother brought him back at the urging of Mr. Castelblanco's sister, and he lived at home for a short period.  *Id*.  During this time, he was on his medication and was able to keep a job for four months until he began drinking again.  *Id*.  He subsequently went off his medication, quit his job, and left his mother's house.  *Id*.

Mr. Castelblanco has applied for Social Security benefits in the past.  In 1992, Mr. Castelblanco was denied Title XVI benefits because his income exceeded the regulation's limitations.  AR 131-32.  In 1993, Mr. Castelblanco was denied benefits because the value of his assets exceeded Title XVI limitations.  *Id*.  In 2000, he was denied benefits because he had the capacity to work in substantial gainful activity.  *Id*.  In 2002, the Social Security Administration granted Mr. Castelblanco benefits, finding that he was disabled with a primary diagnosis of Affective/Mood Disorder and a secondary diagnosis of Substance Addiction or Psychoactive Substance Dependence Disorder, Drugs.  *Id*.  His award was subsequently terminated following a period of incarceration beginning in 2005.  *Id*. at 133.

Mr. Castelblanco's medical records from 2009 to 2011 demonstrate a myriad of diagnoses and symptoms in the context of his frequent hospitalizations and incarcerations for intoxication. In November 2009, Mr. Castelblanco was admitted to Alta Bates Hospital for treatment of an infection in his right arm.  AR 597.  His medical records from the incident document a history of Hyperactivity, Depression, and Bipolar Schizoaffective Disorder, but also state, "This is a fairly-

developed, nourished young male who is awake, alert, oriented, comfortable, ambulatory." *Id*. A

month later, Mr. Castelblanco returned to Alta Bates on a 5150 hold to protect himself and others

from harm.  AR 872.  His records indicate he was aggressive, disoriented, and intoxicated.  *Id*.  Dr.

Tom's clinical impression was that Mr. Castelblanco had psychosis and suicidal ideation.  *Id*.

Mr. Castelblanco's medical records from 2010 are from a period of incarceration, two

arrests for intoxication, and two alcohol-related emergency room visits.  AR 886, 903, 962, 1036.

Criminal Justice Mental Health Records from February to June 2010, while Mr. Castelblanco was

incarcerated, document suicidal ideation, including past suicide attempts, but also suggest

malingering to obtain medication.  AR 886.  Records from April 2010, when Claimant was

arrested for public intoxication, note a long history of mood disorders, self-reported

Schizoaffective and Bipolar Disorder, mood lability, insomnia, anxiety, and Alcoholism.  *Id*.  In

July 2010, Mr. Castelblanco was seen at John George Psychiatric Pavilion ("John George") on a

5150 hold while intoxicated.  AR 1036.  He was diagnosed with Alcohol Intoxication,

Polysubstance Dependence, and housing problems.  Dr. Clague wrote, "Patient would certainly

benefit from substance abuse treatment and out-patient psychiatric care, but he declines referral to

these." *Id*.  In August 2010, Mr. Castelblanco was seen in the emergency room with chief

complaints of paranoid schizophrenia, hallucinations, and a schizophrenic break.  AR 903.  He had

a blood alcohol content ("BAC") of .243 and was diagnosed with Alcohol Dependence and

possible Polysubstance Dependence.  *Id*.  In October 2010, Mr. Castelblanco was hospitalized for

alcohol poisoning.  AR 962.  His physician commented on his significant anxiety and other

psychiatric issues, as well as his excessive alcohol use, stating, "His biggest problem is his

psychiatric disease and his alcoholism.  He says alcohol is the drug that best treats his anxiety and

psychiatric problems . . . I told him that alcohol is essentially killing him . . . He does not see any

way he can stop using alcohol . . . He was drinking somewhere in the neighborhood of 2 quarts of

vodka daily." *Id*.

In 2011, Mr. Castelblanco was hospitalized five times, each time on a 5150 hold after

being arrested for public intoxication.  AR 991, 1005, 1011, 1018, 1025, 1028-29, 1031, 1042-63.

Diagnoses from these hospitalizations include: Alcohol Abuse, Marijuana Abuse, Cannabis-

United States District Court
Northern District of California

1  Induced Psychotic Disorder, Alcohol-Induced Mood Disorder, Psychotic Disorder, Depressive

2  Disorder, Personality Disorder, Schizophrenia, Schizoaffective Disorder, and Malingering.  *Id.*

3      Mr. Castelblanco testified at his hearing before the ALJ that he has been drinking since he

4  was 18-years-old and chooses to self-medicate with alcohol and drugs.  AR 20, 44.  He has

5  reported, "I drink as much as I can."  AR 644.  He has tried marijuana, cocaine, opiates, and

6  intravenous drugs.  AR 781, 823, 991-92.  He testified that he once became sober for two months

7  and went into fits of laughing and crying for hours.  AR 44.  Following this experience, he has

8  stated that he has no interest in becoming sober again.  AR 20, 44.  On numerous occasions, he has

9  refused community resources, outpatient medical treatment, and psychiatric medication, preferring

10  to self-medicate with alcohol and drugs and to "hang out" in Berkeley with his friends.  AR 19,

11  644, 823, 1056.

12      **C.  Standard for Determining Disability**

13      A person is "disabled" for the purposes of receiving Social Security benefits if he or she is

14  unable "to engage in any substantial gainful activity by reason of any medically determinable

15  physical or mental impairment which can be expected to result in death or which has lasted or can

16  be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

17      Social Security disability cases are evaluated using a five-step, sequential evaluation

18  process.  20 C.F.R. §§ 404.1520, 416.920.  The Ninth Circuit has succinctly described this five-

19  step process as follows:

20          Step one disqualifies claimants who are engaged in substantial
            gainful activity from being considered disabled under the
21          regulations.  Step two disqualifies those claimants who do not have
            one or more severe impairments that significantly limit their
22          physical or mental ability to conduct basic work activities.  Step
            three automatically labels as disabled those claimants whose
23          impairment or impairments meet the duration requirement and are
            listed or equal to those listed in a given appendix.  Benefits are
24          awarded at step three if claimants are disabled.  Step four
            disqualifies those remaining claimants whose impairments do not
25          prevent them from doing past relevant work.  Step five disqualifies
            those claimants whose impairments do not prevent them from doing
26          other work, but at this last step the burden of proof shifts from the
            claimant to the government.  Claimants not disqualified by step five
27          are eligible for benefits.

28  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  Even if a claimant is determined to be

United States District Court
Northern District of California

1     disabled pursuant to this five-step process, a claimant is not eligible for Social Security benefits if

2     "drug addiction or alcoholism is a contributing factor material to the determination of disability."

3     20 C.F.R. § 416.935(a).

4           **D.  The ALJ's Decision**

5           The ALJ made the following determinations at each step of the five-step sequential

6     analysis: (1) Claimant had not engaged in substantial gainful activity since February 10, 2010; (2)

7     Claimant's alcoholism and polysubstance dependence qualified as "severe" impairments, but in the

8     absence of substance use, the remaining limitations would cause no more than a minimal impact

9     on his ability to perform basic work activities; (3) Claimant's impairments met the criteria of

10    Section 12.09 with reference to Section 12.03 of the Listings of Impairments 20 C.F.R. Part 404,

11    Subpart P, Appendix 1; (4) Claimant has no past relevant work; and (5) if Claimant stopped the

12    substance use, there would be a significant number of jobs in that national economy that he could

13    perform. AR 15-21.  Alternatively, for step five, the ALJ found that even "assuming [Claimant]

14    suffered from another 'severe' mental impairment," if he stopped the substance use, "he would

15    have the residual functional capacity to perform simple, repetitive tasks in a low stress

16    environment, involving little contact with others and allowing for a moderate to marked

17    impairment in the ability to relate to coworkers, the public, and supervisors."  AR 21.  Finally, the

18    ALJ determined Claimant's substance use was a contributing factor material to its determination of

19    disability because "if he stopped his substance use, the [C]laimant would be capable of making a

20    successful adjustment to work that exists in significant numbers in the national economy," and "[a]

21    finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the

22    Medical-Vocational Guidelines."  AR 22.

23          In support of his assessment that Claimant's only severe impairments were alcoholism and

24    polysubstance abuse and that he would not be disabled but for his substance use, the ALJ cited

25    medical evidence beginning in 2009, noting that this is the "evidence that is relevant to the

26    [C]laimant's current application for benefits."  AR 16.  The ALJ concluded that, since 2009,

27    Claimant "has received treatment primarily for alcohol and drug use and for alcohol and drug-

28    related mental problems."  *Id.*  The ALJ also emphasized that "[o]n virtually every occasion when

the [C]laimant was seen by a mental health practitioner, whether it was during an inpatient hospitalization, or an out-patient basis or while incarcerated, ongoing heavy alcohol use was noted." AR 19.  Finally, the ALJ pointed to the lack of any "period of protracted sobriety during which the [C]laimant has reported anxiety, suicidal ideation or any other mental health symptoms or during which he has exhibited signs of psychosis." *Id*.  In conclusion, the ALJ determined that substantial evidence supported a determination that Claimant's "psychiatric symptoms [are] linked to his substance abuse" and that there is a "lack of bona fide evidence of another separate, ongoing underlying mental disorder other than substance abuse . . . " AR 20.

The ALJ cited eleven medical incidents, and the accompanying records, between 2009 and 2011 in support of his determination that Claimant's substance use was a contributing factor material to his disability.  AR 16-18.  All of the opinions cited by the ALJ are from health care practitioners - ten physicians and one Licensed Clinical Social Worker ("LCSW") - who treated Claimant in the context of substance-related incarcerations or hospitalizations.  AR 16-18.  The records are replete with diagnoses of substance dependence or substance-induced mental disorders and symptoms.  *Id*.  The ALJ pointed to several instances in which the Claimant was found to no longer exhibit psychological symptoms upon discharge.  *Id*.  The ALJ also noted those opinions that made reference to Claimant's stated preference to self-medicate with drugs and alcohol and his refusal to seek mental health treatment or medication for mental illness unless he was incarcerated.  *Id*.  The ALJ specifically referenced two sources, Claimant's treating mental health clinician at Alameda County Department of Behavioral Healthcare Services ("ACDBCS") and a treating physician at John George, who suggested Claimant feigned mental illness and suicidal ideation when incarcerated to obtain medications.  *Id*.

The ALJ rejected the Claimant's own statements regarding his symptoms as not credible to the extent they were inconsistent with the ALJ's finding that in the absence of substance abuse, Claimant suffered from no "severe" impairment.  AR 20-21.  He listed the following reasons for doing so.  *Id*.  First, Claimant chose to self-medicate with alcohol and drugs and refused to follow prescribed treatment.  AR 20.  Second, during no period of time had Claimant experienced his alleged independent psychiatric symptoms while abstinent from alcohol or drugs or while on a

7

1    regimen of psychotropic medication.  AR 20-21.  Finally, the ALJ pointed to evidence of

2    malingering in the record.  AR 21.

3          In light of substantial medical evidence that Claimant's alcohol and substance use caused

4    his mental symptoms and that Claimant malingered to get medication when he could not self-

5    medicate with drugs or alcohol, the ALJ found that Claimant's substance use disorders were

6    contributing factors material to the determination of disability under 20 C.F.R. § 416.935.  AR 22.

7    Therefore, the ALJ ruled that Claimant had not been disabled within the meaning of the Social

8    Security Act at any time from the date the application was filed through the date of his decision.

9    *Id.*

10   **III.    LEGAL STANDARD**

11         Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

12   decision denying benefits to Claimant.  The ALJ's decision must be affirmed if its findings are

13   supported by substantial evidence and grounded upon correct legal standards.  *Moncada v. Chater,*

14   60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this

15   context, the term "substantial evidence" means "more than a mere scintilla but less than a

16   preponderance—[it] is such reasonable evidence that a reasonable mind might accept as adequate

17   to support the conclusion."  *Moncada*, 60 F.3d at 523; *see also Drouin*, 966 F.2d at 1257.  When

18   determining whether substantial evidence exists to support the ALJ's decision, the Court examines

19   the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin,*

20   966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists

21   to support more than one rational interpretation, however, the Court must defer to the ALJ's

22   decision.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

23   **IV.    DISCUSSION**

24         Claimant argues that the ALJ's decision that he is not eligible for benefits should be

25   reversed for four reasons.  First, Claimant argues that the ALJ erred in failing to consider evidence

26   prior to the date of application, which is relevant to the determination of Claimant's disability.

27   The Claimant asserts that his prior award of Title XVI benefits in 2002 support a determination

28   that Claimant has disabling mental impairments independent of his substance abuse.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

Second, Claimant argues that substantial evidence in the record, including from his childhood record, his prior award of Title XVI benefits, and diagnoses of mental impairments independent from his substance abuse between the date of application and the date of the ALJ's decision, establish that Claimant's mental impairments meet the *de minimis* inquiry regarding severity.  Claimant argues that the ALJ erred at step two in finding that his diagnoses of Bipolar Disorder, Schizophrenia, Schizoaffective Disorder, Depression, Psychosis, and Personality Disorder were not severe, thereby prematurely ending the sequential inquiry.

Third, Claimant contends that the ALJ erred in assigning weight to the medical opinions of the record by not giving sufficient weight to the opinions of various examining doctors without providing specific and legitimate reasons, and by assigning the greatest weight to the opinion of the LCSW, which Claimant contends is a non-acceptable medical source.

Finally, Claimant contends that the ALJ erred in the course of determining whether his substance use is material to his disability by (1) requiring a period of sobriety to establish that his mental symptoms persisted in the absence of drug and alcohol use, and (2) rejecting evidence in his childhood records and in medical opinions from 2009 to 2011 that he had several severe mental impairments other than alcohol intoxication or abuse.

**A.  Whether the ALJ Failed to Properly Develop the Record on Claimant's Prior Award of Benefits**

Claimant contends that the ALJ erred by failing to obtain the file underlying Claimant's prior award of Title XVI benefits in 2002.  Motion at 12.  "While evidence pre-dating a claimant's alleged onset date may be of limited relevance in determining whether that claimant is disabled after his alleged onset date, such evidence is not automatically irrelevant to determining disability during the period at issue."  *Manteau v. Colvin*, No. 12-1153, 2013 WL 1390018, at *4 (C.D. Cal. April 4, 2013).  The Social Security Administration has a responsibility to develop the claimant's complete medical history for at least twelve months preceding the month in which the application is filed "unless there is a reason to believe that development of an earlier period is *necessary*."  20 C.F.R. § 416.912(d) (emphasis added).  "This duty exists even when the claimant is represented by counsel."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

1    Claimant cites *Kimmins v. Colvin* in support of his argument that the ALJ had an

2   obligation to develop Claimant's complete medical history beyond the twelve months preceding

3   his application by obtaining the records underlying his prior award.  *See Kimmins v. Colvin*, No.

4   12-4206-YGR, 2013 WL 5513179, at *8 (N.D. Cal. Oct. 4, 2013).  In *Kimmins*, the ALJ wrote

5   that there was "no evidence in this record of any prior determination of disability" notwithstanding

6   the repeated references the claimant and his counsel made regarding a prior reward of benefits:

7           Plaintiff and his counsel attempted to provide the ALJ with
            information regarding the prior award such that the medical records
8           associated with that claim could be obtained. Plaintiff informed the
            ALJ of his prior benefits at the hearing held on May 13, 2010 when
9           asked about where his records would be located… In addition,
            Plaintiff's attorney raised the prior award in the pre-hearing brief to
10          the ALJ sent on February 18, 2011….

11

12   *Id.*  The court wrote that "[b]ased on Plaintiff and his counsel's repeated references to the prior

13   award, there was 'reason to believe that development of an earlier period'" was necessary before

14   making a determination regarding whether he was disabled.  *Id.* (citing 20 C.F.R. § 416.912(d)).

15          This case is similar to *Kimmins* in that Claimant had previously been awarded Social

16   Security benefits for mental impairments, and the ALJ did not retrieve and consider the prior

17   record in making his determination.  *See id.*  Claimant's Counsel mentioned the prior award in the

18   pre-hearing brief, AR 218, and the ALJ recognized this award in his decision when he wrote:

19          The claimant was previously found eligible for supplemental
            security income benefits pursuant to an application filed on August
20          2002.  His eligibility was subsequently terminated following a
            period of incarceration beginning in 2005.
21

22   AR 13.

23          Given the similarities to *Kimmins*, the Court considers whether Claimant's mention of his

24   prior award triggered the ALJ's obligation to retrieve and consider the medical record underlying

25   the award before rendering his decision.  The Tenth Circuit has aptly explained the appropriate

26   standard to apply in a factual scenario exactly like the one currently before this Court:

27          The burden to prove disability in a social security case is on the
            claimant, and to meet this burden, the claimant must furnish medical
28          and other evidence of the existence of the disability. *Bowen v.*

United States District Court
Northern District of California

> *Yuckert*, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). Nonetheless, in cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

*Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).  In *Branum*, the court found that the ALJ did not have a duty to obtain medical records from an accident prior to the twelve months preceding the plaintiff's application because the plaintiff's counsel did not suggest any records were missing during the hearing, did not ask the ALJ's assistance in obtaining additional medical records, and had only referred to the prior accident in a "conclusory fashion."  *Id*. at 1271-72.  The court concluded that the plaintiff had not made a showing that the earlier medical records were needed for the ALJ to properly evaluate the plaintiff's impairment.  *Id*. at 1272.

The Ninth Circuit's interpretation of Social Security regulation 20 C.F.R. § 416.912 is consistent with the Tenth Circuit's holding in *Branum*.  In *Blackmon v. Commissioner of Social Security*, the Ninth Circuit explained, "Under the regulations, the claimant 'must prove medical evidence showing that he/she has impairment(s) and how severe it is during the time he/she says that he/she is disabled.'"  145 F.3d 1336 (9th Cir. 1998) (citing 20 C.F.R. § 416.912).  Citing other Ninth Circuit opinions, the court added, "It is well-established that the claimant bears the burden of providing sufficient evidence of her disability."  *Id*. (citing *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986)).  With regard to the ALJ's duty to fully and fairly develop the record, the court noted that "[t]he ALJ may request additional medical reports or testing, but there is no requirement to do so if the ALJ does not deem it *necessary*."  *Id*. (emphasis added).

While Claimant now contends the ALJ committed legal error in failing to consider the

11

1    medical records supporting his prior award of benefits, the record shows that Claimant's Counsel

2    did not make a showing that this evidence was "necessary" prior to the hearing before the ALJ.

3    *See Branum*, 385 F.3d at 1272.  Claimant's Counsel briefly mentions this prior award of benefits

4    in the pre-hearing brief, but does not argue that the record is in any way significant or probative on

5    Claimant's impairments after February 2010.  *See* AR 218.  Moreover, at the hearing, the ALJ

6    asked Claimant's Counsel, "Is the record complete or am I missing something?"  AR 32.

7    Claimant's Counsel affirmed that the record was complete, noting it reflected "everything in [her]

8    possession…."  *Id.*  As in *Branum*, Claimant's Counsel did not ask the ALJ to retrieve the record

9    supporting Claimant's previous award of benefits.  *See Branum*, 385 F.3d at 1271-72.  There was

10   no discussion of the prior award of benefits at all.  *See* AR 32.

11          In light of the preceding evidence, this case is distinguishable from *Kimmins*, and the Court

12   finds that the prior mention of a benefit award did not oblige the ALJ to obtain the underlying file.

13   While it is the Commissioner's duty to develop a complete medical history for the year preceding

14   the application for benefits, the Commissioner need not look into a previous time period "unless

15   there is a reason to believe that development of an earlier period is *necessary*."  20 C.F.R. §

16   416.912(d).  The regulations do not require an ALJ to retrieve the record supporting a prior award

17   of benefits based on mental illness upon mere mention of the award; rather, the prior record must

18   be "necessary" to the development of a complete record bearing on the Claimant's current

19   disability.  Because Claimant's counsel failed to request the prior record or discuss how it was

20   necessary to the determination of Claimant's disability eight years later in 2010, the Court finds

21   that the ALJ did not err in failing to consider the record underlying Claimant's prior award of

22   benefits.

23   **B.  Whether the ALJ Erred in its Determination of Mr. Castelblanco's Severe**

24   **Impairments**

25          The ALJ found that Claimant's only severe impairments at step two were Alcoholism and

26   Polysubstance Dependence.  AR 16.  Claimant contends that the ALJ erred by failing to find that

27   he has severe mental impairments, including Bipolar Disorder, Schizophrenia, Schizoaffective

28   Disorder, Depression, Mood Disorder, Psychosis, and Personality Disorder.  Motion at 17.

United States District Court
Northern District of California

United States District Court
Northern District of California

The step two inquiry for severity is intended to be "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment may only be considered "non-severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.921(a).  Relevant basic work activities include: 1) understanding, carrying out, and remembering simple instructions, 2) use of judgment, 3) responding appropriately to supervision, co-workers, and usual work situations, and 4) dealing with changes in a routine work setting.  *Id*. § 416.921(b).  "Great care should be exercised in applying the not severe concept," and if the ALJ is "unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step."  SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).[2]

If a claimant has alcoholism or a drug addiction, the ALJ must not attempt to determine the impact of the claimant's addiction on his other mental impairments at step two of the initial five-step inquiry.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  In *Bustamante v. Massanari*, the Ninth Circuit explained:

> Here, the ALJ erred by concluding at step two that [claimant]'s "behavioral and emotional conditions" were "the product and consequence of his alcohol abuse and not an independently severe or disabling impairment."  This was improper.  The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of [claimant]'s alcoholism on his other mental impairments.  If, and only if, the ALJ found that [claimant] was disabled under the five-step inquiry, should the ALJ have evaluated whether [claimant] would still be disabled if he stopped using alcohol.

*Id*. at 955.  The court found that the ALJ's determination at step two that the claimant's mental impairments were not severe was unsupported by substantial evidence.  *Id*. at 956.  The court reversed and remanded to the ALJ to "proceed with step three (and four and five, if necessary) of the disability determination without attempting to separate out the impact of Bustamante's alcohol abuse."  *Id*. at 956.

---

[2] "SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations."  *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)).

United States District Court
Northern District of California

1       Accordingly, this Court must determine whether the ALJ prematurely evaluated the impact

2   of Claimant's substance abuse on his other mental impairments at step two, prior to completing the

3   five-step sequential disability inquiry.  The Court finds that, as in *Bustamante*, the ALJ erred by

4   concluding at step two that all mental impairments suffered by Claimant were the product of his

5   substance abuse.  *See Bustamante*, 262 F.3d at 955. The ALJ reached this conclusion

6   notwithstanding the medical opinions (including those the ALJ cited in support of his opinion) that

7   reflect symptoms and diagnoses of independent mental impairments, including Psychotic

8   Disorder, Mood Disorder, "significant anxiety and other psychiatric issues," Schizophrenia, and

9   Schizoaffective Disorder.  AR 16-18.  Although this evidence is insufficient to establish that

10  Claimant's mental impairments are disabling, as discussed in Sections A and C, it does meet the *de*

11  *minimis* inquiry at step two, which is meant to be a screening device for groundless claims.

12  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

13      Nevertheless, even though the ALJ erred at step two, "[t]he court will not reverse an ALJ's

14  decision for harmless error, which exists when it is clear from the record that the ALJ's error was

15  inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d

16  1035, 1038 (9th Cir. 2008).  In *Bustamante*, the Ninth Circuit remanded the case to the ALJ

17  because the ALJ concluded his disability analysis at step two of the inquiry.  *Bustamante*, 262

18  F.3d at 956.  By contrast, the district court in *Missell v. Colvin* found that the ALJ's consideration

19  of the effect of claimant's alcoholism at step two was harmless error because the ALJ also cited

20  non-drug-use-related reasons for each of its findings and its ultimate decision that the claimant

21  was not disabled.  No. 13-8226, 2014 WL 2048082, at *8 (D. Ariz. May 19, 2014).  Similarly, in

22  *Parra v. Astrue*, the Ninth Circuit held that any error by the ALJ in not finding the claimant's

23  cirrhosis of the liver severe at step two, based on the evidence that it would not have persisted in

24  the absence of alcohol use, was harmless because the ALJ nevertheless "gave [the claimant] the

25  benefit of the doubt: the [Drug and Alcohol Analysis] assumed [the claimant's] cirrhosis was

26  disabling and focused correctly upon whether abstinence would have cured this disability. . . " 481

27  F.3d 742, 747 (9th Cir. 2007).

28      In this case, the ALJ's error at step two was harmless because, while he found that

14

Claimant did not have any non-related substance impairments that were severe at step two, he nevertheless proceeded with the subsequent steps of the analysis.  As in *Parra*, the ALJ gave Claimant the benefit of the doubt by assuming, in the alternative, that Claimant suffered from a severe mental impairment and then analyzing his residual functioning capacity and ability to do work existing in the economy, in the absence of alcohol and other substances.  AR 21.  Under these hypothetical circumstances, the ALJ found that the Claimant would have the "residual functioning capacity to perform simple, repetitive tasks in a low stress environment, involving little contact with others and allowing for a moderate to marked impairment in the ability to relate to coworkers, the public and supervisors."  *Id.*  Therefore, as in *Missell*, the ALJ cited non-drug-use-related reasons for its ultimate conclusion that Claimant was not disabled.  *See Missell*, 2014 WL 2048082, at *8.  Accordingly, the Court finds that the ALJ committed harmless error by failing to find severe mental impairments at step two.

### C.  Whether the ALJ Erred in his Assignment of Weight to the Medical Opinions

In finding that Claimant's substance abuse was a contributing factor material to his disability, the ALJ cited the opinions of ten licensed physicians, as well the opinion of a LCSW, in support of his interpretation of the record.  AR 16-20.  The ALJ concluded that there was a "lack of bona fide objective evidence of another separate, ongoing underlying mental disorder other than substance abuse."  AR 20.

Claimant contends that the ALJ improperly ignored relevant medical evidence, in medical opinions from 2009 to 2011 and in his record from before the alleged onset of disability, which demonstrates the existence of ongoing mental disorders separate from his substance abuse.  Motion at 14.

### 1.    Medical Records from 2009 to 2011

According to Claimant, the ALJ erred in not giving sufficient weight to the opinions of those examining doctors who diagnosed him with medical disorders independent of his substance abuse without providing specific and legitimate reasons for rejecting their opinions.  Motion at 16.  Claimant also argues that the ALJ erred in assigning the greatest weight to the opinion of Mr. Wensley, LCSW, who Claimant contends is a "non-acceptable source."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

As a preliminary matter, the Court notes that Claimant mischaracterizes the ALJ's holding when he states that the ALJ only gave weight to Mr. Wensley's opinion.  The ALJ merely stated that his "conclusion is *consistent with* the opinion of the claimant's treating mental health clinician at ACDBCS that the claimant's mental health issues are strongly correlated with his alcohol use" and that he "afford[s] that opinion great deference."  AR 20 (emphasis added).  The ALJ considered ten other medical opinions in addition to Mr. Wensley's opinion.  AR 16-18.  Furthermore, the ALJ is authorized to consider evidence from non-medical sources, as medical opinions are considered "together with the rest of the relevant evidence."  20 C.F.R. § 404.1527(b).  Indeed, a non-medical source may outweigh the opinion of an "acceptable medical source" if it is better supported by the evidence in the record.  SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006).  As explained below, Mr. Wensley's opinion is indeed supported by the evidence of record.

The Court further notes that most of the physicians cited by Claimant had a more limited relationship with him than did Mr. Wensely, and a physician's opinion is generally accorded less weight when the physician has only seen the claimant on a few occasions.  *See Bowman*, 706 F.2d at 568.  For example, Dr. Bonnie Cook treated Claimant once.  AR 894-97.  Dr. Ming-Jay Wu and Dr. Busse also treated Claimant once in an emergency room visit when he had a BAC of .243.  AR 905-11.  In fact, almost every mental health professional that has examined Claimant did so in the course of a single or brief occurrence, while Claimant was hospitalized or incarcerated for substance use (as Claimant otherwise refused treatment).  As a result, the Court finds that none of these opinions are entitled to controlling weight.

The Court now addresses Claimant's contention that the ALJ erred in failing to provide "specific and legitimate" reasons for disregarding certain symptoms and diagnoses documented in records from Alta Bates Hospital, John George, ACDBCS, and Avista Adventist Hospital.  Motion at 14.  The Ninth Circuit has set forth a detailed explanation of the circumstances under which an ALJ is required to give a "specific and legitimate" reason for rejecting medical evidence in the record:

> "[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."

> *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.
> 1999). "When there is conflicting medical evidence, the Secretary
> must determine credibility and resolve the conflict." *Matney v.*
> *Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ, however,
> must present clear and convincing reasons for rejecting the
> uncontroverted opinion of a claimant's physician. *See Magallanes v.*
> *Bowen,* 881 F.2d 747, 751 (9th Cir.1989). Although the treating
> physician's opinion is given deference, the ALJ may reject the
> opinion of a treating physician in favor of a conflicting opinion of an
> examining physician if the ALJ makes "findings setting forth
> specific, legitimate reasons for doing so that are based on substantial
> evidence in the record." *Id*. The ALJ can "meet this burden by
> setting out a detailed and thorough summary of the facts and
> conflicting clinical evidence, stating his interpretation thereof, and
> making findings." *Id*. The opinions of non-treating or non-
> examining physicians may also serve as substantial evidence when
> the opinions are consistent with independent clinical findings or
> other evidence in the record. *See id.; Morgan,* 169 F.3d at 600. The
> ALJ need not accept the opinion of any physician, including a
> treating physician, if that opinion is brief, conclusory, and
> inadequately supported by clinical findings. *See Matney,* 981 F.2d at
> 1019.

*Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Contrary to Claimant's argument, the ALJ did not need to give specific and legitimate reasons for rejecting every piece of conflicting evidence in the record. Rather, the ALJ was only required to give specific, legitimate reasons for rejecting the opinion of a treating physician that should normally be accorded controlling weight. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c) (controlling weight should be given to a treating physician's opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record). However, as discussed in detail below, no treating physician's opinion qualified for controlling weight either because 1) the opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or 2) the opinion was inconsistent with other substantial evidence in the record. Nevertheless, to the extent the ALJ was required to give a specific and legitimate reason for rejecting an opinion, the Court finds that the ALJ met "his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *See Thomas*, 278 F.3d at 957 (citing *Magallanes,*

17

1    881 F.2d at 751).

2        First, the ALJ was under no obligation to reject each "diagnosis" of a mental disorder in

3    the record.  *See Thomas*, 278 F.3d at 957 (citing *Matney,* 981 F.2d at 1019).  In *Dubek v. Astrue*,

4    the district court held that the ALJ did not err by failing to discuss medical opinions that included

5    mere diagnoses but did not shed light on any specific work-related functional limitations

6    stemming from the disability.  No. 08-5510, 2009 WL 1155226, *4 (W.D. Wash. April 29, 2009).

7    Specifically, the court explained that the doctor did not opine "as to any specific work-related

8    functional limitations stemming from her diagnosed conditions," and "the mere presence of

9    diagnoses in the record is insufficient to establish disability."  *Id*. (citing *Matthews v. Shalala*, 10

10   F.3d 678, 680 (9th Cir. 2006)).  The court wrote that because the doctors "did not find any specific

11   work-related functional limitations, the ALJ cannot be faulted for failing to discuss, let alone,

12   adopt them."  *Id*.  Similarly, here, Claimant cites evidence in the record that merely reveals

13   diagnoses without any further explanation or evaluation of the effect of Claimant's impairments

14   on his work-related functional limitations.  *See* Motion at 14-16. The ALJ was under no obligation

15   to specifically discuss and reject this evidence.  *See Thomas*, 278 F.3d at 957 (citing *Matney,* 981

16   F.2d at 1019).

17       The first opinion Claimant points to as improperly disregarded is from a 2009

18   hospitalization at Alta Bates, in which Claimant is described as having a psychiatric history of

19   Bipolar Schizoaffective Disorder, psychosis, suicidal ideation, and command auditory

20   hallucinations.  Motion at 14-15.  However, this medical history was self-reported, and the ALJ

21   discredited statements by Claimant regarding his symptoms, where they conflicted with the ALJ's

22   conclusion, because of Claimant's choice to self-medicate with alcohol and drugs, his refusal to

23   follow prescribed treatment, and observations by his clinician at ACDBCS that he was feigning

24   mental illness.  AR 16, 20-21.  The ALJ also noted that at the time of his hospitalization, Claimant

25   was not receiving psychiatric care and reported that he was drinking "bottles and bottles" of

26   alcohol, which is consistent with the ALJ's ultimate conclusion that Claimant's substance abuse

27   was a material contributing factor to his disability.  AR 16.

28       Next, Claimant cites his diagnoses of Mood Disorder, Bipolar Disorder, and Psychotic

United States District Court
Northern District of California

18

United States District Court
Northern District of California

1  Disorder from John George in 2009 as medical evidence of independent mental impairments that

2  the ALJ erred in ignoring without explanation.  Motion at 15.  However, the ALJ sufficiently

3  acknowledged and discredited these diagnoses by pointing out their inconsistency with other

4  evidence in the opinion that suggested Claimant's symptoms were caused by substance use.  *See*

5  *Dubek*, 2009 WL 1155226, at *4.  Specifically, the ALJ referenced the physician's statements that

6  1) Claimant would have to be reevaluated for any non-alcohol-related psychological symptoms

7  once sober, and 2) at the time of his discharge, Claimant was appropriate and clear and did not

8  appear to be responding to internal stimuli or having hallucinations.  AR 16.

9      Next, Claimant cites various mental diagnoses from 2010, which he claims were

10  improperly rejected without reason.  AR 894-97, 906-07, 911, 966-67.  However, the ALJ rejected

11  those opinions, which were based on Claimant's self-reported symptoms during periods of

12  incarceration, in light of other evidence in the record suggesting they were feigned.  Specifically,

13  Claimant's treating mental clinician at ACDBCS, Mr. Wensely, opined that Claimant feigned

14  mental illness while in custody in order to obtain the psychotropic medication that he only took

15  when he could not self-medicate with alcohol.  AR 887.  The ALJ concluded that Mr. Wensley's

16  opinion was consistent with the other evidence in the record, and the Court agrees.  AR 17.

17      The 2010 diagnoses cited by Claimant are not probative of Claimant's functional

18  limitations in the absence of substance abuse.  First, most are based on Claimants' own self-

19  reporting.  Second, any mention of independent psychiatric disorders is "brief, conclusory, and

20  inadequately supported by clinical findings," and, therefore, need not be accepted by the ALJ.  *See*

21  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  For example, in April 2010, Bonnie

22  Cook, LMFT, wrote, Claimant "[s]ays he self-medicates when in community and only takes meds

23  in jail," while her mental diagnosis of Schizoaffective Disorder, cited by Claimant, was made in

24  the following context: "27yoM with long [history] of some sort of mood disorder; mentions

25  Schizoaffective, Bipolar disorder."  AR 894.

26      Claimant cites as relevant to his disability additional records from an incident when

27  Claimant was brought into the emergency room for psychosis and alcohol intoxication on August

28  10, 2010, but these records are not inconsistent with the ALJ's ultimate conclusion.  For example,

United States District Court
Northern District of California

1    Dr. Ming-Jay Wu wrote that a psychiatric evaluation would need to wait until "patient's alcohol

2    level [was] sufficiently low enough."  AR 905.  The Admin Intake stated that Claimant had a

3    history of multiple diagnoses, but that the "[f]irmer [diagnosis] is Alcohol Dependence, or perhaps

4    polysubstance abuse."  AR 911.  This Intake also described how when Claimant had been on

5    medicine at age 19, he was able to keep a job for four months until he eventually started drinking

6    again and went off his medicine.  *Id*.  Although Dr. Daniel Busse gave a discharge diagnosis of

7    Schizophrenia as part of the same emergency visit, he wrote that after 30 hours, "his behavior has

8    been well controlled here.  He has had no threatening or bizarre behavior, no suicidal ideations."

9    AR 907.  Claimant was ultimately released because he had "no observable [symptoms]."  AR 908.

10    Claimant cites records from an incident in October 2010, when Claimant was admitted for

11    severe sensory and motor peripheral neuropathy caused by alcohol.  As Claimant pointed out, Dr.

12    Fanestil noted psychiatric disease, but he also stated that Claimant was "drinking somewhere in

13    the neighborhood of 2 quarts of vodka daily."  Claimant was treated with shots of whisky because

14    of his stated desire to continue drinking, and he refused any psychiatric evaluation or medication.

15    AR 967.

16    Claimant cites records from 2011 as relevant to his disability, but the diagnoses he

17    mentions are not probative of his functional limitations.  *See* Motion at 15.  First, Claimant cites

18    an opinion from Dr. Aulakh Jasdeep at John George from April 6, 2011, which included a

19    diagnosis of Psychotic Disorder and documented command auditory hallucinations and paranoid

20    ideation.  *Id*.  In his opinion, the ALJ addressed this incident, in which Claimant came in on a

21    5150 hold after becoming agitated and aggressive during an arrest for alcohol intoxication.  The

22    ALJ cited the Discharge Summary provided by Dr. Eskuchen two days after Dr. Jasdeep's Intake

23    Evaluation.  Dr. Eskuchen diagnosed Claimant with Alcohol and Marijuana Abuse and Cannabis

24    Induced Psychotic Disorder and noted that the suicidal ideation and auditory hallucinations he

25    complained of were in the context of alcohol use.  AR 991, 1005.  The evidence in the record

26    supports the ALJ's decision to favor Dr. Eskuchen's opinion over Dr. Jasdeep's diagnosis.  First,

27    Dr. Eskuchen evaluated Claimant upon discharge after more time had passed since Claimant's

28    arrest for intoxication.  Second, Dr. Jasdeep's diagnoses are conclusory with little supporting

1  evidence, whereas Dr. Eskuchen's assessment is more in-depth and consistent with the record of

2  the incident as a whole.  Third, the symptoms documented by Dr. Jasdeep and cited by Claimant

3  were self-reported by Claimant, thus the ALJ need not accept them.  *See Johnson*, 189 F.3d at 564.

4  Finally, Dr. Jasdeep's report is actually consistent with an alternative explanation, accepted by the

5  ALJ, that Claimant's reported symptoms were the result of his malingering.

6        Claimant also cites a diagnosis of Depressive Disorder by Dr. Jyoti Jain on June 19, 2011.

7  AR 1011.  This diagnosis is not probative of Claimant's functional limitations.  It is a brief,

8  conclusory diagnosis unsupported by any additional evidence, as Dr. Jyoti Jain provided no further

9  assessment.  It also conflicts with the other records from the same incident, in which Claimant was

10  arrested with a BAC of .218 and diagnosed on his Exit Disposition with Alcohol Dependence and

11  Malingering.  AR 1013.

12        Claimant points to diagnoses of Psychotic Disorder, Polysubstance Dependence, and

13  Personality Disorder and the prescription of Zyprexa, Ativan, Lithium, and Wellbrutin by Dr.

14  Bruch in May 2011.  Motion at 15.  However, the diagnoses made by Dr. Bruch are not probative

15  of Claimant's functional limitations in the absence of alcohol.  The incident which gave rise to Dr.

16  Bruch's evaluation was Claimant's hospitalization after threatening suicide upon arrest for public

17  intoxication.  AR 1025.  The Intake Evaluation completed by Dr. Roux stated that this was an

18  "overall typical presentation for patient - and suspect again reflects combination noncompliant

19  [schizophrenic] effects of chronic/recent [alcohol] use, antisocial character pathology, and some

20  [symptom] embellishment for secondary gain."  *Id*.  The Exit Disposition by Dr. Bruch, referenced

21  by Claimant, characterized Claimant as having logical thought processes, no hallucinations, and

22  no suicidal ideation.  AR 1031.  Dr. Bruch wrote,

23
>   Educated patient about the effects of alcohol and drug use, including
24  impaired judgment, disinhibition, and exacerbation of mood and
    psychotic symptoms.  Discussed alcohol's role as a depressant and
25  the associated increased risk of self-harm.  Advised patient to
    abstain and recommended participation in substance abuse treatment
26  program.

27  AR 1030.  Dr. Bruch also opined that any attempts at self-harm would be done with the intent of

28  malingering so that Claimant would be removed from jail to a psychiatric facility.  *Id*.

Claimant cites diagnoses of Alcohol Intoxication, Schizophrenia, Alcohol Dependence, and Personality Disorder by Drs. Aboujaoude and Epstein in May 2011 and a diagnosis of Schizoaffective Disorder by Drs. Minzenberg and Niclas in June 2011.  Here, too, the diagnoses are not probative of Claimant's functional limitation in the absence of substance abuse.  In May 2011, Claimant was transferred from prison to John George because of self-reported suicidal ideation.  AR 1028-29.  He did not report any particular plan and said he was "'fed up' because 'every time I try to have some fun I end up arrested or at John George.'"  AR 1028.  Again, in June 2011, Claimant was transferred to John George from jail after complaining of suicidal ideation.  AR 1018.  The Intake Evaluation stated he had no auditory hallucinations, was not confused or disorientated, had only vague suicidal ideation with no plan or intent, and also had vague alcohol withdrawal with tremors and nausea as a result of the gallon of vodka he drank before jail.  *Id.*  The diagnosis of Schizoaffective Disorder was a conclusory listing, unsupported by clinical findings in the record, and thus the ALJ was not required to accept it.  *Id.*; *see Bayliss*, 427 F.3d at 1216.

Claimant argues that Dr. Edwards, who treated him on numerous occasions in 2011, diagnosed him with Schizoaffective Disorder and prescribed Seroquel and Thorazine.  Motion at 16.  Claimant also points to a diagnoses by Dr. Harris of Psychotic Disorder in 2011.  *Id.*  Both opinions are from doctors who treated Claimant at ACDBCS while he was incarcerated.  The multiple records from this time period, including one from Mr. Wensley which was cited by the ALJ, primarily note that Claimant was seeking medication due to his inability to self-medicate with drugs or alcohol.  AR 1042-63.  The diagnoses cited by Claimant are not particularly probative of Claimant's functional limitations, in light of the other evidence of record.  Dr. Edwards' opinions are cursory and difficult to read.  AR 1046, 1051, 1056-57.  Dr. Harris diagnosed Claimant via two screening checklists that are extremely brief.  AR 1053, 1059.  Her diagnosis is also internally inconsistent with her Progress Notes, in which she wrote, "the inmate is clear, cooperative except for missing his meds."  AR 1053.  The ALJ did not err by not specifically addressing these opinions, as they are not probative of Claimant's functional limitations and not necessarily inconsistent with his conclusion.

United States District Court
Northern District of California

22

Finally, Claimant points to a later diagnosis by Mr. Wensley of Schizoaffective Disorder, which he claims should control over Mr. Wensley's earlier opinion that his mental health issues were linked to substance abuse.  However, Mr. Wensley's reference to Schizoaffective Disorder is not a diagnosis, but merely a cursory recitation of Claimant's history.  AR 1042.  Specifically, the brief assessment in which Mr. Wensley included Schizoaffective Disorder in a listing of diagnoses stated:

> [Client] recently back in custody.  He was seen for a TBA.  Client saw Dr. yesterday.  Client has a long [medical] history.  Client drinks alcohol.  Client mostly takes meds here in custody.  Client was disheveled.  Client often [medication] seeks when he's in custody.  Client has history of Schizoaffective Disorder and Alcohol Dependence.  Please see Dr.'s note for more info.  Client is supposed to get released next week, 12/28/11.  Will schedule to see if wants release [medications] and to give referrals.

AR 1042.  In context, Mr. Wensley's mention of Schizoaffective Disorder is not at all probative of Claimant's work-related functional limitations and not entitled to controlling weight.

The Court concludes that the ALJ properly addressed the probative evidence.  Where the ALJ did not provide a specific, legitimate reason for not including a particular medical opinion, the opinion was either not probative of Claimant's functional limitations or was inconsistent with substantial evidence in the record.

## 2.   Medical Record Prior to 2009

Claimant argues that the ALJ failed to consider evidence from his childhood records, which demonstrates a long history of mental impairments with signs and symptoms beginning as early as age five, and which Claimant contends supports a finding that he has disabling mental disorders, independent of his substance abuse.[3]  Motion at 9.

Claimant argues that the following childhood records are relevant to his present claim for disability because they establish that the onset of certain mental disorders occurred early in Claimant's life and persisted despite treatment and medication and without the use of substances:

---

[3] The Court has already addressed, in Section A, Claimant's argument that the ALJ failed to properly develop the record by not retrieving the medical records underlying his prior award of benefits.

1  1) the discharge report from Claimant's first psychiatric hospitalization at age eight for out-of-

2  control behavior which includes diagnoses of Major Depression, Anxiety Disorder, and

3  Oppositional Defiant Disorder, 2) Claimant's discharge summary for lack of progress after two

4  years at Provo Canyon School at age 16 which includes diagnoses of Major Depression, ADHD,

5  and Oppositional Defiant Disorder and medical prescriptions for Zoloft, Seroquel, Dexedrine, and

6  Haldol, and 3) Claimant's records from Olive Crest Treatment Center at age 17 showing his

7  success was hindered by his unwillingness to comply with basic societal rules, opposition to

8  authority, and his clouded judgment.  AR 298-302, 359-62, 513-14, 531.

9          Pursuant to the legal standard set forth above, the Court finds that the ALJ did not err when

10  it did not discuss the findings in Claimant's childhood records because these opinions present no

11  conflict with the medical opinions cited by the ALJ.  *See Thomas*, 278 F.3d at 956-57 (citing

12  *Matney v. Sullivan,* 981 F.2d at 1019).  Specifically, they are not inconsistent with the ALJ's

13  ultimate conclusion that Claimant's substance abuse contributes materially to his disability.

14  Although Claimant's childhood records include diagnoses of Depression, Anxiety, ADHD, and

15  Oppositional Defiant Disorder, they do not establish that these impairments prevent Claimant from

16  doing any work that exists in significant numbers in the economy.  For example, the discharge

17  report from Claimant's psychiatric hospitalization at age eight indicated that Claimant's prognosis

18  was capable of improving with treatment and that he was intelligent, alert, and marginally

19  cooperative and without suicidal ideation or hallucinations.  AR 301-02.  His records from Provo

20  Canyon School demonstrated the progress Claimant was able to achieve in a structured

21  environment.  AR 418-544.  The records stated that he had no problems with general functioning,

22  was doing well in therapy, was making academic progress, was following the rules, and was

23  making progress with his peers over the course of his stay.  AR 418-544.  While Claimant's

24  records from Olive Crest Residential Treatment Center indicated certain mental impairments, they

25  also made clear that he was "capable of successfully completing high school, the RTC program

26  and many of the other challenges that face him" and was able to hold a job as a Computer Tutor

27  through the County-funded Workability Program.  AR 514-15.  In sum, the records do not

28  establish that Claimant's mental impairments, absent his substance abuse, are disabling.

United States District Court
Northern District of California

United States District Court
Northern District of California

### D.  Whether the ALJ Erred in Determining Mr. Castelblanco's Substance Abuse is Material

The ALJ found that Claimant's substance abuse was a contributing factor material to his disability, citing ongoing heavy alcohol use, which was present on virtually every occasion when the Claimant was seen by a mental health practitioner and which practitioners consistently linked to his psychiatric symptoms.  AR 19-20.  Claimant argues that the ALJ erred by requiring him to demonstrate a period of sobriety to show that his substance use was not material.  Motion at 20.  Claimant also argues that he provided substantial evidence that he would remain disabled even in the total absence of drug or alcohol use.  Motion at 21.

If an ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the "drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a).  The key factor in making this determination is whether the claimant would still be found disabled if he stopped using the drug or alcohol.  *Id*. § 416.935(b)(1).  The claimant's drug or alcohol addiction is only a material contributing factor to the determination of disability if the remaining limitations would not be disabling.  *Id*. § 416.935(b)(3).

The claimant bears the burden of proving his substance abuse is not a material contributing factor.  *Parra*, 481 F.3d at 744-45.  In *Parra*, the Ninth Circuit found that the plaintiff failed to carry his burden because "[t]he record offered no evidence supporting the notion that the disabling effects of [the plaintiff]'s cirrhosis would have remained had he stopped drinking," and his physician had stated that cirrhosis is generally reversible.  *Parra*, 481 F.3d at 748. On the other hand, "there does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."  SSR 13-2p, 2013 WL 621536, *4 (Feb. 20, 2013).

First, the Court finds that the Claimant incorrectly characterizes the ALJ's statements regarding a period of sobriety.  The ALJ merely pointed to the lack of evidence provided by Claimant that his psychotic symptoms and combative behavior would remain in the absence of substance use in light of the substantial evidence to the contrary (discussed in Section B).  AR 21.  The ALJ wrote that "the record clearly indicates that there has been no period of time during

United States District Court
Northern District of California

1  which [Claimant] has experienced significant psychiatric symptoms while abstinent from alcohol

2  and/or drugs . . . " *Id.* This case is analogous to *Parra*, in which the record was insufficient to

3  support a conclusion as to whether the plaintiff's cirrhosis would have persisted had he ceased his

4  alcohol consumption, and therefore, the plaintiff failed to meet his burden. *Parra*, 481 F.3d at

5  748. Here, rather than requiring a period of sobriety, the ALJ merely pointed to the insufficiency

6  of the record to support a conclusion that Claimant's psychotic and combative symptoms would

7  continue to be disabling if he ceased his alcohol and drug consumption. Combined with

8  substantial evidence in the record that Claimant's symptoms are tied to his substance abuse, the

9  lack of evidence to the contrary shows that Claimant did not meet his burden.

10      Claimant contends that substantial evidence supports a finding of disability even in the

11  absence of substance abuse. Whether substantial evidence supports an alternative interpretation

12  from the ALJ's determination is not the appropriate standard of review. Rather, the Court must

13  examine the administrative record as a whole to determine whether substantial evidence supports

14  the ALJ's determination. *See Drouin,* 966 F.2d at 1257; *Hammock,* 879 F.2d at 501. Where the

15  record supports more than one rational interpretation, the Court must defer to the ALJ's decision.

16  *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258. Therefore, the Court only reviews the record

17  to determine if substantial evidence supports the ALJ's conclusion.[4]

18      The following substantial evidence supports the ALJ's finding that alcohol is a material

19  factor contributing to Claimant's disability. In November 2009, when Claimant was admitted to

20  John George after displaying paranoid and combative behavior, his BAC was .314. AR 16, 823-

21  26. Upon admission, his treatment provider, Dr. Niclas, opined that he could not accurately

22  evaluate Claimant for non-alcohol-related psychological symptoms until he was sober. *Id.* Upon

23  discharge, Claimant was stable, calmer, appropriate, clear, and did not appear to be responding to

24  internal stimuli or experiencing hallucinations. AR 16.

25      In April 2010, Claimant was incarcerated and underwent a period of detoxification. AR

26

27

28

[4] In this Section, the Court focuses on the evidence that supports the ALJ's determination, having already addressed, in the previous Sections, the evidence that Claimant has argued supports an alternative interpretation.

16, 894, 897.  Mental status examination findings were largely normal and Claimant was "very upbeat, very talkative."  AR 897.

In August 2010, Claimant was seen in the emergency room with a chief complaint of paranoid schizophrenia and hallucinations.  AR 905.  Claimant had not been taking medications and reported having had a significant amount of alcohol.  *Id.*  Mental status examination findings were generally unremarkable, with no psychotic symptoms, good insight, and clear and logical thoughts.  AR 911.  Claimant was diagnosed with alcohol dependence and possible polysubstance dependence with no other confirmed psychiatric diagnoses.  AR 17.

In October 2010, Claimant was hospitalized with alcohol poisoning.  AR 960.  He reported drinking at least two quarts of vodka daily, and because he planned to continue drinking, he was treated with one shot of whisky every four hours to prevent alcohol withdrawal.  AR 967.  In April and May 2011, Claimant was seen at John George for issues stemming from his alcohol abuse. AR 991-94, 1000, 1030-31.  Upon discharge, he was stable, calm, clear, and coherent with no neurovegetative signs of depression.  AR 1030-31.  In June 2011, Claimant reported drinking daily and that he had drunk a gallon of vodka before he was arrested.  AR 1018.  At the time of his discharge, he was again described as not exhibiting any neurovegetative signs or symptoms of depression.  AR 1017.

In November 2011, Claimant reported suicidal ideation and appeared to be in alcohol withdrawal with a BAC of .451.  AR 1068-70.  His Intake Evaluation was typical of these incidents.  AR 1065.  It stated:

> The patient is a 29 year old white male with history of mood and psychotic symptoms in the context of polysubstance dependence, primarily alcohol dependence, and anti-social personality disorder who presents on 5150 from Alta Bates after being found down in the community intoxicated.  Patient is on probation for public intoxication. At jail, patient said he wanted to hurt himself because he has a terrible life.  He denied having a plan and said he wanted to get medication. Records . . . note several prior JGPP presentations for acute psychosis, agitation, depression/suicidality, disorganization, and/or secondary gain (food/shelter, avoid jail.)  Mental status evaluation: Calm but with cooperation limited by alcohol withdrawal discomfort.  Affect mildly dysphoric.  Thought process is logical and linear with no evidence of auditory hallucinations or paranoid ideation.

*Id.*

United States District Court
Northern District of California

1       Substantial evidence also supports the ALJ's determination that Claimant's self-reported

2   symptoms may be discounted due to his unwillingness to stop using substances or to follow a

3   prescribed treatment regimen and his malingering.  In April 2010, Claimant stated that he only

4   took psychotropic medications in prison and otherwise self-medicated with alcohol, which he did

5   not want to stop using.  AR 894, 897.  In June 2010, Claimant reported that he did not get

6   outpatient treatment and only took medication while incarcerated.  AR 17, 887.  Mr. Wensley

7   stated that Claimant seemed to feign mental illness, that his mental health issues were strongly

8   correlated to his alcohol use, and that he did not need to be referred to a doctor for further mental

9   health treatment.  AR 17, 887.   On May 9, 2011, Dr. Bruch stated, "I do not believe that any

10  attempts at self harm would be an authentic danger to self, but done with intent of malingering."

11  AR 18, 1030.  In December 2011, Mr. Wensley again noted that Claimant mostly took

12  medications while in custody and was often medication seeking.  AR 1042.

13      The Court finds that, considering the record as a whole, substantial evidence supports the

14  ALJ's determination that Claimant's substance abuse is a contributing factor material to his

15  disability, and therefore, Claimant is ineligible for benefits.

**V.      CONCLUSION**

16

17      For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED.

18  Summary judgment is GRANTED in favor of Defendant.  Judgment shall be entered in favor

19  Defendant.

20      **IT IS SO ORDERED.**

21  Dated: August 13, 2014

22

23  JOSEPH C. SPERO
    United States Magistrate Judge

24

25

26

27

28